UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| EXP LOGISTICS, also known as | ) | |
| TMI OF TENNESSEE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. 1:12-CV-00309 |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| RODNEY KILGORE, individually and | ) | |
| doing business as MONTEAGLE | ) | |
| WRECKER SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Before the Court is a motion to dismiss filed by Defendants Rodney Kilgore, individually and doing business as Monteagle Wrecker Service ("Defendants") (Court File No. 3). Plaintiff EXP Logistics, also known as TMI of Tennessee, Inc. ("Plaintiff") filed a response in opposition (Court File No. 5). For the following reasons, the Court will **DENY** Defendants' motion to dismiss (Court File No. 3).

## I.      RELEVANT FACTUAL AND PROCEDURAL HISTORY

On July 28, 2012, Plaintiff EXP Logistics was transporting freight on Interstate 24 in Marion County, Tennessee, using a tractor trailer leased from Rush Trucking Leasing, Inc. (Court File No. 1 ("Compl."), ¶¶ 11-12). While on Interstate 24, the trailer portion caught on fire. Plaintiff's truck driver proceeded to detach the tractor from the burning trailer. The fire destroyed the trailer, but the tractor remained undamaged (Compl. ¶¶ 12-18). The Tennessee State Highway Patrol responded

to the accident and requested the help of Monteagle Wrecker Service to clean the accident scene and tow the burned trailer. Monteagle Wrecker Service towed the trailer approximately 2.5 miles from the accident scene. Monteagle Wrecker Service, however, also urged the state trooper to order Plaintiff's driver to drive the undamaged tractor from the accident scene to Monteagle Wrecker Service's facility so the tractor could serve as collateral for the towing and cleaning services provided (Compl. ¶¶ 19-25).

The state trooper did, in fact, order Plaintiff's driver to drive the tractor to Monteagle Wrecker Service's facility (Compl. ¶ 26). Fearing an arrest for failure to follow the state trooper's order, Plaintiff's driver complied and took the tractor to Monteagle Wrecker Service's facility. Monteagle Wrecker Service then placed the tractor behind a locked fence and sent Plaintiff a bill for $23,775, plus $60 per day for storage fees for the trailer and $100 per day for the freight storage (Compl. ¶¶ 26-31). Plaintiff has since paid $10,000 to Monteagle Wrecker Service, which still refuses to release the tractor until the remaining fee balance is paid (Compl. ¶¶ 34-36).

Plaintiff filed a complaint on September 12, 2012, and brought, *inter alia*, a 42 U.S.C. § 1983 claim against Defendants. Plaintiff specifically alleges "[t]he seizure of the Tractor [by Defendants] was conducted under color of state law and pursuant to the authority of a Tennessee state trooper" (Compl. ¶ 51). Plaintiff seeks relief in the form of compensatory damages, punitive damages, attorney's fees, and a court order releasing the tractor to Plaintiff (Compl. ¶ 81).

In response, Defendants timely filed a motion to dismiss on October 3, 2012. Defendants allege Plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. As cause, Defendants argue (1) "Neither Defendant mentioned in the complaint was acting under color of state law"; (2) "The issues surrounding this cause of action are not

constitutional issues, rather they are issues regarding a disputed bill and towed vehicle"; and (3) Plaintiff "never clearly asserts what constitutional rights Monteagle has violated" (Court File No. 4).

## II. STANDARD OF REVIEW

Although Defendants seek to dismiss Plaintiff's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, their motion is more properly construed at this stage as a Rule 12(b)(6) motion. Defendants filed their motion within one month of the complaint being filed and, although framed as a factual challenge to jurisdiction, the arguments raised in Defendants' motion pertain to issues frequently raised in Rule 12(b)(6) motions seeking dismissal of § 1983 claims, such as (1) whether Plaintiff can establish Defendants acted under color of state law and (2) whether Plaintiff can establish its constitutional rights were violated. At this early stage of the case, the Court concludes the more appropriate lens through which to analyze Defendants' arguments is Rule 12(b)(6).

A Rule 12(b)(6) motion should be granted when it appears "beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998). For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). The same deference does not extend to bare assertions of legal conclusions, however, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

3

The Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)), this statement must nevertheless contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility as explained by the Court "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.   DISCUSSION

Plaintiffs alleging a violation under 42 U.S.C. § 1983 must satisfy "two elements: (1) the defendant acted under color of state law; and (2) the defendant's conduct deprived the plaintiff of rights secured under federal law." *Fritz v. Charter Tp. of Comstock,* 592 F.3d 718, 722 (6th Cir. 2010) (citing *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998)). Here, Defendants argue neither element can be satisfied. Thus, each element will be addressed in turn.

### A.   State Actors

First, Defendants contend Plaintiff's 42 U.S.C. § 1983 claim must fail because Plaintiff

cannot establish Defendants qualify as state actors under either the state-compulsion test, public function test, or nexus test (Court File No. 4). To establish the first element, a plaintiff must demonstrate the private party defendant qualifies as a state actor under 42 U.S.C. § 1983. *Fritz*, 592 F.3d at 718. Further, "the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). To determine whether a defendant qualifies as a state actor under 42 U.S.C. § 1983, the United States Court of Appeals for the Sixth Circuit has adopted three tests used by the United States Supreme Court: the public-function test, the state-compulsion test, and the symbiotic-relationship or nexus test. *Revis v. Meldrum,* 489 F.3d 273, 289 (6th Cir. 2007) (citing *Lansing v. City of Memphis,* 202 F.3d 821, 828 (6th Cir. 2000)).

According to the Sixth Circuit, "[t]he public-function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections." *Wolotsky v. Huhn,* 960 F.2d 1331, 1335 (6th Cir. 1992). Under this test, the powers exclusively reserved to the state are limited to "only functions like holding elections, exercising eminent domain, and operating a company-owned town." *Reguli v. Guffee*, 371 F. App'x 590, 600 (6th Cir. 2010) (citing *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003)). Here, Plaintiff fails to demonstrate Defendants acted within any power traditionally reserved for the state. "Towing and storing vehicles is not a function reserved exclusively for the state." *Medlar v. City of Brookpark*, 1:12-CV-02077, 2013 WL 123639, at *2 (N.D. Ohio Jan. 9, 2013). Additionally, the nexus test "requires a sufficiently close relationship between the state and the private actor so that the action

5

taken may be attributed to the state." *Am. Postal Workers Union, Local 96 v. City of Memphis,* 361 F.3d 898, 905 (6th Cir. 2004) (citing *Wolotsky v. Huhn*, 960 F.3d at 1335). Plaintiff has failed to allege any facts that would satisfy the nexus test.

Lastly, the Sixth Circuit has interpreted the state-compulsion test to require "proof that the state significantly encourages or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state." *Id.* at 905. "The state compulsion test requires a state 'exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state.'" *Lansing v. City of Memphis*, 202 F.3d 821, 829 (6th Cir. 2000) (citing *Wolotsky v. Huhn*, 960 F.2d at 1335). "More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).

Here, Plaintiff's case meets the standard of the state-compulsion test. Plaintiff alleges its driver, fearing arrest, only agreed to turn possession of the tractor over to Defendants after the state trooper ordered the action (Compl. ¶¶ 27-28). At the very least, the trooper's order constitutes "more than mere approval." *Wolotsky*, 960 F.2d at 1335. Further, the order by the state trooper to move the vehicle in this instance could qualify as "significant encouragement." *Lansing*, 202 F.3d at 829. After Defendants notified the state trooper of the company's policy to hold the undamaged tractor as collateral for payment of clean-up services and towing of the damaged trailer, Plaintiff's truck driver alleges he only agreed to turn possession of the tractor over to Defendants after the state trooper issued the order. Plaintiff's complaint states, "Responding to Monteagle Wrecker Service, the state trooper ordered Plaintiff's driver to drive the Tractor to Monteagle Wrecker Service's

facility and leave the tractor there. Fearing arrest in the event of disobedience to the state trooper's orders, Plaintiff's driver complied with the state trooper's order" (Compl. ¶¶ 25-27). Plaintiff's truck driver then delivered the tractor to Defendants' facility, who then placed the tractor behind a locked fence (Compl. ¶ 30).

Plaintiff maintains its driver only complied with Monteagle Wrecker Service's request to turn over the tractor to Defendants after the state trooper ordered him to do so. *Id. See Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007) (holding a private towing company, acting upon the instruction of a police officer to impound a vehicle during an ongoing criminal investigation, qualified as a state actor under 42 U.S.C. § 1983); *Soffer v. City of Costa Mesa*, 798 F.2d 361, 364 (9th Cir. 1986) (holding, in certain situations, a private towing company could qualify as a state actor under 42 U.S.C. § 1983). *But see Banks v. Fedierspiel*, No. 5:10-CV-427-JBC, 2011 WL 1325046, at *5 (E.D. Ky. Apr. 1, 2011) ("Private towing companies with whom municipalities contract to tow and impound cars do not become state actors by performing their public contracts."); *Breyer v. Vill. of Ashwaubenon*, 444 F. App'x 99, 101 (7th Cir. 2011) (holding, because the landlord in *Breyer*, not a police officer, initiated the towing of the vehicle, defendant, a private towing company, did not qualify as a state actor). Because of the state trooper's order to Plaintiff's driver to turn possession of the tractor over to Defendants, the Court finds Plaintiff has plausibly pleaded sufficient facts to satisfy the first element of § 1983 under the state-compulsion test.

### B.      Constitutional Violation

Defendants also contend Plaintiff fails to allege in its complaint any constitutional violations, as required under 42 U.S.C. § 1983 (Court File No. 4). Plaintiff, however, argues the taking and holding of the tractor by Defendants constitutes a violation of its Fourth Amendment and Fourteenth

Amendment rights. The Fourth Amendment provides an individual with the right to be secure in his or her property without fear of unreasonable search and seizure. U.S. Const. amend. IV. In *Soldal v. Cook County*, 506 U.S. 56, 62 (1992), a case involving whether the tearing of a mobile home from its foundation constituted a "seizure" under the Fourth Amendment, the United States Supreme Court ruled the Fourth Amendment extends to both property and privacy interests. "A 'seizure' of property, we have explained, occurs when 'there is some meaningful interference with an individual's possessory interest in that property.'" *Id.* at 61 (quoting *United States v. Jacobson*, 466 U.S. 109, 113 (1984)). *Cf. United States v. Place*, 462 U.S. 696 (1983) (holding, although a dog sniffing luggage failed to constitute a search under the Fourth Amendment, the actual taking of the luggage did constitute an unlawful seizure under the Fourth Amendment).

Here, Plaintiff has plausibly pleaded sufficient facts to demonstrate the taking of its tractor constituted an unreasonable seizure. No facts alleged in Plaintiff's complaint indicate its lease agreement with Rush Truck Leasing Inc., which accorded Plaintiff the legal right to possess the tractor for a specific amount of time, is illegitimate. On July 28, 2012, Plaintiff's driver delivered the tractor to Defendant's facility after being ordered to do so by the state trooper (Compl. ¶¶ 27-28). Plaintiff's complaint alleges, "A wrecker or towing company had no legal right to request or obtain a seizure of the EXP Logistics Tractor" (Compl. ¶ 42). Additionally, Plaintiff argues a towing company has no right to hold an asset, which was not physically towed, as collateral for a towing charge (Compl. ¶ 43). Defendants currently have exclusive possession of Plaintiff's tractor (Compl. ¶ 36). Taking all of this into account, the Court concludes Plaintiff has plausibly pleaded it suffered a "meaningful interference" with its possessory interest in the tractor under the Fourth Amendment. Accordingly, Plaintiff has plausibly pleaded sufficient facts to state its 42 U.S.C. § 1983 claim.

8

## IV.    CONCLUSION

For the reasons discussed above, the Court will **DENY** Defendants' motion to dismiss (Court

File No. 3).

An Order shall enter.


/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**